Peter C. **DORAN**

v.

**UNIVERSITY OF MAINE AT FARMINGTON.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1986.

Decided Feb. 25, 1986.

---

Sherman & Sandy, Robert E. Sandy, Jr. (orally), Waterville, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Linda A. Monica, Joyce A. Wheeler (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Peter C. Doran appeals from a judgment of the Superior Court, Kennebec County, denying him relief from alleged discriminatory treatment by the University of Maine at Farmington (UMF) in violation of the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4632 (1979 & Supp.1985). Doran claims that he was denied an appointment as Director of the Center For Human, Health and Family Studies in favor of a female candidate on the basis of his sex. UMF argues that it acted lawfully, pursuant to an affirmative action program required by the Code of Fair Practices and Affirmative Action, 5 M.R.S.A. §§ 781–790 (1979 & Supp.1985), and designed to correct a long-standing imbalance of women in administrative positions at UMF. Because the record does not support UMF's contention that it acted pursuant to an affirmative action plan, we conclude that Doran was subjected to discrimination in his employment in violation of 5 M.R.S.A. § 4572.

Accordingly, we vacate the judgment of the Superior Court.

## I.

In the years 1980 through 1983 UMF consolidated its sixteen existing academic departments into five departments and three centers. A new position of center director was created, with an additional salary of $4,000 per year for a three year term beginning May 15, 1982. Center directors were given reduced teaching duties and classified as administrators. The Department of Health Education, in which Doran was a tenured professor, was consolidated with two other departments into the Center For Human, Health and Family Studies. The center consisted of eighteen full-time faculty members, of whom ten were female and eight were male. In January 1982, the faculty for the Center elected Doran as their interim center director to serve until May 15, 1982.

In March of 1982 the Faculty Senate of UMF adopted a written procedure for the nomination of center directors. Under the procedure the full-time faculty members for each center were to select by majority vote a nominee for center director. The names of the nominees then were forwarded to the president of UMF, or the president's designee, for approval or rejection. If the president or presidential designee were to reject a center's nominee, that center was to conduct a second election.

At the time of the election of the first center directors, the president's designee was the acting provost, to whom the president sent a memorandum:

As you and the faculty approach the nomination and appointment of new chairmen and directors, I hope you will keep in mind that an aspect of [UMF's] mission is to reflect within our academic administration the career opportunities we seek for our women students elsewhere. I assume that interested and qualified women faculty will be given

full consideration in your and the faculty's decision.

The Center for Human, Health and Family Studies conducted an election by secret written ballot to choose its nominee for center director. The candidates for nomination were Doran and Elizabeth Marks, both of whom were qualified for the position of center director. Doran received ten votes, and Marks received eight votes. By memorandum dated April 16, 1982 the Dean of the Division of Education reported to the provost that Doran had been selected as the center's nominee.

On April 29, 1982 the provost informed Doran that his nomination as center director was rejected. By memorandum of the same date, the provost wrote to the faculty of the center:

> I have carefully considered the nomination you have made of Dr. Peter Doran to be the director of the Center for Human, Health and Family Studies for the next three years. While I find Dr. Doran to be a capable administrator who certainly could do the job, I have serious concerns that none of the departments or centers has nominated a woman to a leadership role. I am also aware that there are capable women within your center who could and would be capable leaders as well. Since there are few centers or departments where this is true, some having no women in them at all, I have concluded that I must reject your nomination in order to try to get a woman administrator. This may seem unfair to some of you, particularly Dr. Doran, but it is my judgment that the issue of affirmative action is important enough to make this decision necessary.

The provost met with faculty of the Center For Human, Health and Family Studies on April 30, 1982. He discussed with them his concerns regarding the importance of affirmative action, read his memorandum of April 29, and stated that, given the number of qualified women in their center, the center should be able to elect a female administrator. Thereafter, the center faculty nominated Elizabeth Marks as center director, and her nomination was approved by the provost.

At the time of the selection of center directors, UMF had in place a written affirmative action plan, adopted after a self-evaluation of employment practices at UMF. The plan covers, among other things, hiring and promotion of university employees. The recruitment and promotion provisions of the plan outline steps to be taken to encourage qualified women, handicapped, and minority applicants to apply for university positions, and to ensure equal and fair consideration to all qualified candidates. The plan sets no hiring quotas and makes no provisions for hiring and promotional procedures that prefer women candidates to men. The record does not reflect whether the plan has been approved by either the State Department of Personnel or the Maine Human Rights Commission. See 5 M.R.S.A. §§ 788, 789.

## II.

Although UMF admits that Doran's rejection as center director apparently violated the Maine Human Rights Act, it contends that Doran's rejection was permitted under the affirmative action provisions of the Code of Fair Practices because UMF acted pursuant to a written affirmative action plan. We reject UMF's contention.[1]

Section 783 of the Code of Fair Practices requires the appointment, assignment and promotion of personnel according to merit and fitness "without regard to race, color, religious creed, national origin, sex, ancestry, age or physical handicap, unless relat-

1. The parties have urged us to look to federal case law for guidance in construing Maine anti-discrimination statutes when an employer has acted pursuant to an affirmative action plan. See, e.g., Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 2576, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); United Steelworkers of America, AFL–CIO v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); Valentine v. Smith, 654 F.2d 503 (8th Cir.1981). In view of our disposition of the issues before us, we need not have recourse to the decisions of other courts.

ed to a bona fide occupational qualification." Sections 781 and 783 also require each department or state agency to prepare an affirmative action program for that department to follow. These affirmative action programs are to include procedures designed to increase the numbers of minorities, women and handicapped persons at all levels of the State's workforce. 5 M.R.S.A. § 782. Nothing in the Code of Fair Practices, however, requires that a written plan prefer women, minorities or handicapped persons to other possible candidates for employment.

UMF's affirmative action plan outlines the goals and the implementation of affirmative action policies for employment at UMF. The recruitment and promotion provisions of the plan speak in terms of encouraging women and minority applicants to apply for UMF positions. Nowhere does the plan provide for promoting a minimum number of female personnel, for denying a male applicant promotion over a female applicant, or for preferring females to males in any job where sex is not a bona fide occupational qualification.

The UMF president's memorandum to the provost did not seek to implement any hiring procedure set forth in the affirmative action plan. Neither he nor the provost were acting pursuant to the UMF affirmative action plan. Their actions, however well-intentioned, were an ad hoc attempt to promote women over men in administrative positions. Ad hoc hiring preferences based on sex are in clear violation of both the Maine Human Rights Act and the Code of Fair Practices. *See* 5 M.R.S.A. §§ 783, 4572(1)(A). The Superior Court is bound, therefore, to find that unlawful discrimination occurred and must proceed to determine an appropriate remedy or remedies in accordance with 5 M.R.S.A. § 4613.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.